Danny Wayne PICKERING, et al

v.

Craig Etienne HENRY, et al.

Civ. A. No. 89–377–A.

United States District Court,
M.D. Louisiana.

Sept. 5, 1989.

John L. Avant, Avant & Falcon, Baton Rouge, La., for plaintiffs.

H. Alston Johnson, Steven J. Levine, F. Scott Kaiser, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, La., for defendants.

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court upon a motion for partial summary judgment brought on behalf of the defendants, Craig Etienne Henry, Liquid Carbonic Specialty Gas Corporation, Liquid Carbonic Industries Corporation and National Union Fire Insurance Company of Pittsburgh. The motion is opposed. There is no need for oral argument. Removal jurisdiction is allegedly based on diversity of citizenship under 28 U.S.C. § 1332.

This wrongful death and survival action arises out of a motor vehicle accident that occurred when the decedent's car struck the trailer of a tractor-trailer rig driven by Mr. Henry. The accident occurred at the intersection of Louisiana Highways 30 and 73 and the alleged cause of the accident was that the driver of the tractor-trailer rig ran a red light. The accident allegedly occurred as the driver of the truck was on his way to Liquid Carbonic Specialty Gas Corporation to have the tube trailer refilled with methane. It is undisputed that the trailer did not leak during or subsequent to

the accident and that injuries to the decedent were caused by the vehicle itself, not the allegedly hazardous methane gas being hauled. Plaintiffs ask for compensatory damages plus punitive damages pursuant to Louisiana Civil Code Article 2315.3, which allows exemplary damages, "if it is proved that the plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."

In support of the motion for partial summary judgment, defendants assert that there is no causal connection between the alleged collision and the transportation of any hazardous substance. Further, they assert that the tube trailer in question was not carrying a chemical load at the time of the collision. In opposition, plaintiffs assert that no causal connection is required by the statute in order to award punitive damages. Plaintiffs argue that methane is a hazardous substance under Article 2315.3 since it is a main component of natural gas, and natural gas is thus a hazardous substance, citing *Bouy v. Transcontinental Gas Pipe Line Corp.*, 645 F.Supp. 109 (M.D.La.1986). There is a genuine issue as to whether or not there was methane in the tube trailer. Defendants say the trailer was empty. Plaintiffs claim that the trailer was not really empty, since the fumes of the methane remained in the trailer even after it had been unloaded, and that the fumes were explosive, thus hazardous. As counsel for plaintiffs puts it in brief, "It is common knowledge one does not strike a spark in a so-called 'empty' five gallon gasoline container." (Brief for plaintiffs, p. 4)

Defendants cite this court's unreported decision in *Jerry D. Busby, et al v. Chemical Waste Management, Inc.* (CA No. 86–696–A), holding that punitive damages could not be recovered in a slip and fall case where plaintiff slipped in an allegedly hazardous/toxic substance, because the fall was caused by the slippery nature of the substance rather than the hazardous properties. In *Busby*, this court commented:

Assuming without deciding that the chemical make-up of the sludge would classify the sludge material as 'hazardous' or 'toxic' under Article 2315.1,[1] this court concludes that the undisputed facts here demonstrate that plaintiff's injuries were caused because of the slippery nature of the substance, not because it might contain some compound which might be carcinogenic. Kitchen grease is slippery, but not 'hazardous' or 'toxic' and this court is convinced that Louisiana did not intend to extend punitive damages to ordinary slip and fall cases.

A proper reading of Article 2315.1 requires that plaintiff's injuries be caused by the hazardous or toxic nature of the substance involved.

Plaintiffs argue that considering the policy underlying the exemplary or punitive damages statute and its language, its meaning becomes plain and that such damages may be awarded without regard to connexity between the hazardous or toxic substance and the cause of the injury. Plaintiffs cite the language of the article itself, to the effect that such damages may be awarded, "if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."

It is plaintiffs' argument that the code article plainly means that if a person who is storing, handling or transporting a hazardous or toxic substance, causes injury by conduct which is in wanton or reckless disregard for public safety, then punitive damages may be awarded without regard to whether the hazardous or toxic substance caused the injury. As in this case, plaintiffs argue that the tractor trailer was transporting a hazardous/toxic substance (methane gas fumes) and that punitive damages may be awarded because of the driver's reckless disregard of public safety in running a red light, despite the undisputed fact that the injury was not related to the hazardous substance. Plaintiffs' argument is that it is the legislative intent to

[1]. Since renumbered as Article 2315.3.

punish people who are storing, handling or transporting hazardous or toxic substances for their disregard of the public safety without regard to the cause of the injury.

Under *Erie Railroad v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this federal district court must apply the law of Louisiana as would a Louisiana court. Since no Louisiana court has addressed the issue presented by this litigation, the federal court must use its best judgment in determining how the Louisiana courts would construe Article 2315.3. *Commonwealth Life Ins. Co. v. Neal,* 521 F.Supp. 812, 817 (M.D.La.1981), aff'd 669 F.2d 300 (5th Cir.1982).

Without conceding that the "plain meaning" dictates the result advanced by plaintiffs, the argument is interesting and given the precise wording of the code article, plausible.

Judge Duhe has concluded that because Article 2315.3 is an exception to the general public policy of Louisiana against punitive damages, it must be strictly construed. See *Vincent v. Southwest La. Elec. Membership Corp.,* 666 F.Supp. 94 (W.D.La. 1987). In this court's view, it is not even necessary to apply the rule of strict construction to the code article in order to demonstrate that it does not apply to this intersectional collision.

We start with the clear proposition that the legislature did not intend to extend exemplary damages to all tort actions, or even to all motor vehicle accidents, although it certainly has the power to do so. Plaintiffs' own analogy of the so-called "empty" five gallon gasoline container serves to illustrate the point. If plaintiffs' construction of the code article were adopted, then every motorist who runs out of fuel will be "transporting" a hazardous/toxic substance while he is driving back to the service station in order to return the "empty" gasoline container. Should he become involved in a traffic accident then, under plaintiffs' interpretation, such "transportation" would render him li-able for punitive damages even though no "spark" was struck in the "empty" container.

Indeed, the same argument can be extended so as to cover any gasoline powered vehicle. Accepting plaintiffs' argument that gasoline is a hazardous/toxic substance, then the driver of every gasoline powered vehicle can be said to be "transporting" a hazardous/toxic substance because of the gasoline in the tank of his vehicle. Can it have truly been the intent of the Louisiana legislature to provide for punitive damages in every motor vehicle accident which occurs in the state?

To ask the question is to answer it. As the court noted in *Waggoner v. Kellogg–Moore Oil Co., Inc.,* 375 So.2d 197 (La.App. 2d Cir.1979):

The Louisiana Civil Code commands the courts to apply the letter of the law unless the words or expressions are dubious in which case the courts may look to the context of the words, other statutes and the spirit of the law. Louisiana Civil Code Articles 13, 14, 16 and 18.[2] Pursuant to this rule, the jurisprudence has established that when the literal construction of a statute would lead to absurd results, the letter of the law must give way to the spirit so as to produce a reasonable result. *Smith v. State, Through Dept. of Pub. Safety,* 366 So.2d 1318 (La.1978) and *Dore v. Tugwell,* 228 La. 807, 84 So.2d 199 (1955). Therefore, it is the duty of the court to apply the statute as written unless such application would lead to an absurd result and then the court must attempt to interpret it in such a manner as to reach a reasonable result consistent with the legislative intent.

Id. at 199.

See also, *State ex rel Thompson v. Dept. of Civil Service,* 214 La. 683, 38 So.2d 385, 389 (1949).

It is this court's firm conviction that construing the language of Article 2315.3

2. Article 13 has been renumbered as Article 9, Article 14 has been renumbered as Article 11, Article 16 has been renumbered as Article 12 and Article 18 has been renumbered as Article 10 of the Louisiana Civil Code.

so as to extend exemplary damages to all vehicle accidents involving gasoline powered vehicles or even to all accidents involving trucks carrying hazardous/toxic materials as cargo, produces an absurd result.

The court has secured a copy of excerpts from the hearing before the legislative committee which considered the proposed code article and notes that the author of the bill explained it in part as follows:

> Now I think we all recognize that the hazardous and toxic substances provide a real and substantial threat to not only individuals but to property and that if a person or a particular defendant is reckless, is not sensitive toward the safety of the person ..., that they (sic) ought to be responsible for punitive damages....

This brief explanation certainly indicates to this court that the legislative intent was directed toward the dangers involved in the mishandling of toxic substances and the harm that the substances might do to individuals who were exposed to them or came in contact with them because of wanton or reckless mishandling. There is no hint that the legislation is directed toward the ordinary hazards of modern highway travel.

This court concludes that Article 2315.3 must be limited to those situations where the injury to the plaintiff is caused by the hazardous or toxic nature of the substance involved. Since plaintiffs here make no claim of any harm to the decedent by reason of the toxic nature of the methane gas fumes which were allegedly in the tank of the trailer, the court concludes that Article 2315.3 does not apply in this case.

For the forgoing reasons, defendants' motion for partial summary judgment is hereby GRANTED.